UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| **JULIO MATEO, ROSALINA JUAN JUAN,** and **MARIA PEDRO JUAN**, | Civil Case No. 3:13-CV-00180-KI |
| Plaintiffs, | OPINION AND ORDER |
| v. | |
| **CITY OF PORTLAND, AARON SCHMAUTZ,** Personally, and **ROYCE CURTISS,** Personally, | |
| Defendants. | |

    Julio Mateo
    Rosalina Juan Juan
    Maria Pedro Juan
    647 Ohio Avenue
    Salem, Ohio  44460

        Pro Se Plaintiffs

Page 1 - OPINION AND ORDER

William W. Manlove , III
Senior Deputy City Attorney
Office of the City Attorney
1221 SW Fourth Avenue, Suite 430
Portland, OR 97204

    Attorney for Defendants

KING, Judge:

Plaintiffs Julio Mateo, Rosalina Juan Juan, and Maria Pedro Juan bring this civil rights action against the City of Portland and Portland Police Officers Schmautz and Curtiss. Before the court is Defendants' Motion for Summary Judgment [30]. For the reasons below, I grant the motion.

## FACTS

Rosalina Juan Juan is the mother of Maria Pedro Juan and Domingo Pedro Juan. Julio Mateo is the father of Eduardo Mateo. Rosalina Juan Juan and Julio Mateo are married, and Domingo and Eduardo are stepbrothers.[1]

On the evening of February 5, 2011, Ms. Juan Juan called 911 to seek help with a fight between Domingo and Eduardo, both sixteen years old at the time, at her home in southeast Portland. Ms. Juan Juan told the 911 dispatcher her son was drunk. Domingo was drinking so heavily that day, he remembers nothing of the incident other than drinking with a friend away from his home earlier in the day and waking up later in the jail.

Officers Schmautz and Carroll responded to the 911 call. They both understood the call concerned a domestic disturbance involving two intoxicated teenaged sons in the same family

---

[1] To avoid confusion with similar names, I will refer to the teenaged boys by their first names.

Page 2 - OPINION AND ORDER

who were fighting each other. When the officers arrived, the front door of the house was open. Officer Carroll could see into the living room where two women were holding down a man he later identified as Domingo. Domingo was yelling unintelligibly but otherwise giving the women little resistance. Other people in the room were crying and shouting. Officer Carroll stayed in the living room and Officer Schmautz went to a back room of the house with Ms. Juan Juan.

Eduardo was sitting on a bed in the back room, had abrasions on his face and head, and was very dirty. Officer Schmautz asked if he was okay. Before getting an answer, Officer Schmautz heard louder and louder shouting from the front room, causing him to be concerned for Officer Carroll's safety. He asked Eduardo to stay seated and asked Ms. Juan Juan to stay with Eduardo.

When Officer Schmautz returned to the living room, Domingo was becoming agitated. Officers Schmautz and Carroll tried to take control of Domingo by each taking one of his arms. Officer Schmautz held Domingo's wrist down, asked if he had any weapons, and started to pat him down for weapons. During the patdown, Eduardo came into the living room and started yelling words to the effect of "Get the fuck off my brother!" Schmautz Decl. ¶9. Officer Carroll saw Eduardo jump on Officer Schmautz and knock him off Domingo, causing Officer Schmautz to stumble backwards towards the floor. Eduardo began pulling at Officer Schmautz's legs and throwing punches towards him. Several family members grabbed Domingo, who resisted them.

Officer Schmautz saw Eduardo's hand move across the officer's torso towards where his duty pistol was holstered; Eduardo was staring at the pistol. As Officer Schmautz started to turn away, he felt Eduardo's right hand clamp down on top of his pistol holster. The officer spun to the left and put his left hand on the pistol to keep it in the holster. Officer Schmautz believed

Eduardo was trying to remove the pistol from the holster, which the officer believed could have turned the incident into a confrontation involving deadly force. To keep Eduardo from gaining control of the pistol, Officer Schmautz struck Eduardo with his fist one time in the face. Mr. Mateo lunged at Officer Schmautz and pushed him in the chest. Officer Schmautz pushed Mr. Mateo a single time in the face and shouted, "Get back now!" Schmautz Decl. ¶ 11. Eduardo continued to tug on Officer Schmautz's duty belt. To keep Eduardo from reaching towards his pistol, Officer Schmautz hit Eduardo in the face three or four more times with his fist. This caused Eduardo to release his grip on the duty belt.

Officer Carroll let go of Domingo to assist Officer Schmautz, who was sitting on the floor. Eduardo was grabbing at Officer Schmautz. Officer Carroll could not pull Eduardo off Officer Schmautz, so he used his Taser in drive stun mode on Eduardo's lower back and yelled at him to stop resisting. Eduardo let go of Officer Schmautz, who yelled to Officer Carroll to back out of the house because Eduardo had been trying to get his pistol.

The two officers went to the front yard to wait for additional officers to come. They continued to hear and see fighting inside the house and tried to verbally command people to come outside. Only a female family friend uninvolved in the fight exited the house.

Once more officers arrived, they reentered the house to take Domingo and Eduardo into custody. Officer Carroll helped Officer Curtiss take Eduardo to the ground. Officer Carroll put his knee across Eduardo's head and other officers tried to pull Eduardo's arms out from underneath him.

Officer Schmautz and Officer Greenlee approached Domingo, who was being restrained by family members. When the officers took Domingo's arms to arrest him, Ms. Pedro Juan

Page 4 - OPINION AND ORDER

began screaming and ran up to Officer Schmautz. Officer Carroll saw her hit Officer Schmautz in the back. When Ms. Pedro Juan was crouched over the back of Officer Schmautz, Officer Carroll continued to hold Eduardo with his right hand and pulled Ms. Pedro Juan's hair with his left hand. She fell to the floor and Officer Carroll let go of her hair. He saw Officer Schmautz push Ms. Pedro Juan away from the two officers. At some point, Officer Curtiss pulled Ms. Pedro Juan off the backs of the other officers by pulling her leg. Officer Curtiss took Ms. Pedro Juan into custody and escorted her to the kitchen. Ms. Juan Juan started tugging Officer Curtiss's shirt and left arm. He blocked her hand with his hand and told her not to grab at police officers. Officer Curtiss arrested Ms. Pedro Juan for Interfering with a Police Officer, ORS 162.247, and Attempted Assault of a Public Safety Officer, ORS 163.208.

Ms. Pedro Juan's criminal proceeding was terminated in her favor. Eduardo and Domingo admitted in juvenile court to committing the crime of resisting arrest, ORS 162.315. Mr. Mateo's face was red and sore for less than a week. He did not seek medical care.

## LEGAL STANDARDS

Summary judgment is appropriate when there is no genuine dispute as to any material fact and the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(a). The initial burden is on the moving party to point out the absence of any genuine dispute of material fact. Once the initial burden is satisfied, the burden shifts to the opponent to demonstrate through the production of probative evidence that there remains a fact dispute to be tried. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). On a motion for summary judgment, the court "must view the evidence on summary judgment in the light most favorable to the

non-moving party and draw all reasonable inferences in favor of that party." Nicholson v. Hyannis Air Serv., Inc., 580 F.3d 1116, 1122 n.1 (9th Cir. 2009) (internal quotation omitted).

## DISCUSSION[2]

I.   Excessive Force Claim Under the Fourth Amendment

Mr. Mateo and Ms. Juan Juan allege Officer Schmautz violated their Fourth Amendment rights by subjecting them to excessive force.

> In evaluating a Fourth Amendment claim of excessive force, courts ask "whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them." Graham v. Connor, 490 U.S. 386, 397, 109 S. Ct. 1865, 104 L. Ed. 2d 443 (1989). This inquiry "requires a careful balancing of 'the nature and quality of the intrusion on the individual's Fourth Amendment interests' against the countervailing governmental interests at stake." Id. at 396, 109 S. Ct. 1865 (quoting Tennessee v. Garner, 471 U.S. 1, 8, 105 S. Ct. 1694, 85 L. Ed. 2d 1 (1985)). "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments–in circumstances that are tense, uncertain, and rapidly evolving–about the amount of force that is necessary in a particular situation." Id. at 396-97, 109 S. Ct. 1865. Reasonableness therefore must be judged from the perspective of a reasonable officer on the scene, "rather than with the 20/20 vision of hindsight." Id. at 396, 109 S. Ct. 1865 (citing Terry v. Ohio, 392 U.S. 1, 20-22, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968)).

Glenn v. Washington Cnty., 673 F.3d 864, 871 (9th Cir. 2011).

The analysis has three steps. First, the court assesses "the severity of the intrusion on the individual's Fourth Amendment rights by evaluating the type and amount of force inflicted." Id. (internal quotation omitted). Second, the court evaluates "the government's interest in the use of force." Id. Third, the court "balances the gravity of the intrusion on the individual against the government's need for that intrusion." Id. (internal quotation omitted).

---

[2] Plaintiff's counsel stipulated to dismissal of the negligence claim prior to withdrawing from the case. Accordingly, I dismiss the negligence claim.

Page 6 - OPINION AND ORDER

The court evaluates the second step–the strength of the government's interest in the use of force–by considering three primary but nonexclusive factors under the totality of the circumstances: (1) most importantly, "whether the suspect poses an immediate threat to the safety of the officers or others"; (2) "the severity of the crime at issue"; and (3) "whether he is actively resisting arrest or attempting to evade arrest by flight." Id. at 872 (quoting Graham, 490 U.S. at 396, 109 S. Ct. 1865). Other possible factors include the availability of less intrusive alternatives, whether officers gave proper warnings, and whether it should have been apparent to officers that the person was emotionally disturbed. Id. at 872, 874.

The court should grant summary judgment sparingly in excessive force cases because the issue often turns on a jury's credibility determinations. Id. at 871.

Officer Schmautz responded to Ms. Juan Juan's 911 call for police assistance in stopping her sons from fighting. One of the sons was heavily intoxicated. Although there was a disturbance among the family members prior to the officers arriving, quite a melee erupted before a large contingent of officers eventually took Domingo and Eduardo into custody.

There is no evidence in the record that Officer Schmautz touched Ms. Juan Juan in any way. Accordingly, I grant summary judgment dismissing her excessive force claim.

While attempting to get control of the situation, Officer Schmautz was put at risk when Eduardo attempted to pull the officer's gun from his holster. When Eduardo grabbed the holster, Officer Schmautz struck him in the face. This caused Mr. Mateo, Eduardo's father, to lunge at Officer Schmautz and push him. In response, Officer Schmautz pushed Mr. Mateo a single time in the face and shouted, "Get back now!" Mr. Mateo complied, and Officer Schmautz used no

more force against him. The push caused Mr. Mateo's face to be red and sore for less than a week, and he did not seek medical care.

Turning to the first step of the analysis, Officer Schmautz pushed Mr. Mateo a single time in the face, causing him discomfort for less than a week. This is a very minimal type and amount of force. Officer Schmautz did not use his fist and did not employ any type of weapon, such as a Taser.

The second step is to evaluate the government's interest in the use of force by considering whether there was an immediate threat to the safety of the officers or others, the severity of the crime, whether the person is actively resisting arrest or attempting to evade arrest by flight, and any other relevant considerations. Officer Schmautz was attempting to keep Eduardo from taking his gun, an event that could have brought disastrous consequences to all in the room. There was an immediate and severe threat to the safety of not only the officers but also the family. Officer Schmautz was forced to push Mr. Mateo, who had lunged and pushed at the officer when he struck Eduardo. Although Mr. Mateo was not actively resisting arrest, Eduardo was and Mr. Mateo was trying to assist him. This extremely high government interest is offset only slightly by the fact that the officers came to the house because of a mutual fight between the brothers, not a particularly severe crime. Because of the rapidly evolving situation, there was no time for alternatives and no time for warnings.

Finally, I must balance the gravity of the intrusion on the individual against the government's need for that intrusion. The balance weighs strongly in favor of the government's need to use force against Mr. Mateo. Officers Schmautz and Carroll were trying mightily to control a situation involving two fighting brothers (one of whom was severely intoxicated),

Page 8 - OPINION AND ORDER

attempts by one brother to take Officer Schmautz's gun, and other family members aiding the brothers rather than the officers. If Eduardo had succeeded in taking the gun, it is likely that one or more of the people in the room would have been shot. The use of force was objectively reasonable to prevent that tragedy. Officer Schmautz did not use excessive force in violation of the Fourth Amendment when he pushed Mr. Mateo in the face. Thus, I grant summary judgment dismissing Mr. Mateo's excessive force claim.

II.     Wrongful Arrest Claim Under the Fourth Amendment

Ms. Pedro Juan alleges Officer Curtiss violated her Fourth Amendment rights by wrongfully arresting her.

An arrest is reasonable under the Fourth Amendment if there is "probable cause to believe the arrestee has committed, or is committing, an offense." Conner v. Heiman, 672 F.3d 1126, 1132 (9th Cir. 2012) (internal quotation omitted). Probable cause exists "if, under the totality of circumstances known to the arresting officers, a prudent person would have concluded that there was a fair probability that [the defendant] had committed a crime." Id. (internal quotation omitted). The court can consider the collective knowledge of all officers involved in the criminal investigation. Torres v. City of Los Angeles, 548 F.3d 1197, 1207 (9th Cir. 2008). Probable cause is an objective standard; the officer's subjective intention is irrelevant in determining whether his actions were reasonable under the Fourth Amendment. United States v. Struckman, 603 F.3d 731, 740 (9th Cir. 2010). If there is probable cause for any single charge, not necessarily the charge the officer was contemplating, the arrest is reasonable under the Fourth Amendment. Taso v. Desert Palace, Inc., 698 F.3d 1128, 1147 (9th Cir. 2012) (correct question is whether the officer "had probable cause to arrest [the suspect] for *any* offense").

Page 9 - OPINION AND ORDER

Officer Curtiss arrested Ms. Pedro Juan for Interfering with a Peace Officer, ORS 162.247, and Attempted Assault of a Public Safety Officer, ORS 163.208.

Interfering with a Peace Officer, ORS 162.247, states in relevant part:

> (1) A person commits the crime of interfering with a peace officer or parole and probation officer if the person, knowing that another person is a peace officer or a parole and probation officer as defined in ORS 181.610 (Definitions for ORS 181.610 to 181.712):
>
> > (a) Intentionally acts in a manner that prevents, or attempts to prevent, a peace officer or parole and probation officer from performing the lawful duties of the officer with regards to another person; or
> >
> > (b) Refuses to obey a lawful order by the peace officer or parole and probation officer.

Attempted Assault of a Public Safety Officer, ORS 163.208, states in relevant part:

> (1) A person commits the crime of assaulting a public safety officer if the person intentionally or knowingly causes physical injury to the other person, knowing the other person to be a peace officer, corrections officer, youth correction officer, parole and probation officer, animal control officer, firefighter or staff member, and while the other person is acting in the course of official duty.

"Physical injury" is defined as " impairment of physical condition or substantial pain." ORS 161.015(7).

Ms. Pedro Juan appears to have been trying to keep Domingo from being arrested. In doing so, she screamed at Officer Schmautz, hit him in the back, and was crouched over him. Officer Curtiss had to pull Ms. Pedro Juan's legs to remove her from off the backs of the officers.

In hitting Officer Schmautz and jumping on the officers' backs, there is a fair probability Ms. Pedro Juan was attempting to physically injure the officers, a violation of Attempted Assault of a Public Safety Officer. There is also a fair probability she was attempting to prevent the officers from performing their duty to arrest Domingo, a violation of Interfering with a Peace

Page 10 - OPINION AND ORDER

Officer. Thus, there was probable cause to arrest her on either charge, and Officer Curtiss did not violate her Fourth Amendment rights in doing so. Consequently, I grant summary judgment dismissing her claim for wrongful arrest under the Fourth Amendment.

III.     Battery

Mr. Mateo and Ms. Juan Juan allege battery claims against Officer Schmautz.

A civil battery is a voluntary act that causes harmful or offensive contact. Ballard v. City of Albany, 221 Or. App. 630, 640-41, 191 P.3d 679 (2008).

An Oregon statute authorizes a police officer to use physical force when he has a reasonable belief it is necessary to make an arrest or in self-defense when making an arrest:

> Use of physical force in making an arrest or in preventing an escape
>
> Except as provided in ORS 161.239 (Use of deadly physical force in making an arrest or in preventing an escape), a peace officer is justified in using physical force upon another person only when and to the extent that the peace officer reasonably believes it necessary:
>
> (1) To make an arrest or to prevent the escape from custody of an arrested person unless the peace officer knows that the arrest is unlawful; or
>
> (2) For self-defense or to defend a third person from what the peace officer reasonably believes to be the use or imminent use of physical force while making or attempting to make an arrest or while preventing or attempting to prevent an escape.

ORS 161.235.

For the reasons discussed in the constitutional claim, a reasonable jury would have to conclude that Officer Schmautz used a reasonable amount of force against Mr. Mateo when he lunged at the officer to prevent the arrest of Eduardo. Thus, ORS 161.235 is a full defense to the

battery claim. Moreover, there is no evidence Officer Schmautz touched Ms. Juan Juan in any way. Accordingly, I grant summary judgment dismissing both battery claims.

IV.     Malicious Prosecution and False Imprisonment

Ms. Pedro Juan alleges malicious prosecution and false imprisonment claims based on Officer Curtiss arresting her.

Probable cause is a complete defense to a false arrest or imprisonment claim and to a malicious prosecution claim. Bacon v. City of Tigard, 81 Or. App. 147, 149-50, 724 P.2d 885 (1986) (false imprisonment); Hartley v. State Water Res. Dep't, 77 Or. App. 517, 520, 713 P.2d 1060 (1986) (malicious prosecution).

For the reasons explained above, I concluded Officer Curtiss had probable cause to arrest Ms. Pedro Juan for violation of Attempted Assault of a Public Safety Officer and Interfering with a Peace Officer. Consequently, there is a complete defense to the malicious prosecution and false imprisonment claims, and I grant summary judgment dismissing both claims.

## CONCLUSION

There are no material factual issues preventing dismissal of this case, and defendants are entitled to judgment as a matter of law. Defendants' Motion for Summary Judgment [30] is granted. This case is dismissed with prejudice.

IT IS SO ORDERED.

Dated this     3rd     day of September, 2014.

　　　　　　　　　　　　　　　　　　    /s/ Garr M. King    
　　　　　　　　　　　　　　　　　　Garr M. King
　　　　　　　　　　　　　　　　　　United States District Judge